1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    SEAN SLIDER,                                No. C 08-4847 SI

9              Plaintiff,                        **ORDER GRANTING DEFENDANTS'
                                                 MOTION FOR SUMMARY JUDGMENT**
10      v.

11   CITY OF OAKLAND, a municipal corporation;
     WAYNE TUCKER, in his official capacity as
12   Chief of Police for the CITY OF OAKLAND,
     WALKER BARDSLEY, JOHN CUNNIE and
13   JOSEPH FESMIRE, individually and in their
     capacities as police officers for the CITY OF
14   OAKLAND; A&B AUTO COMPANY, a
     corporation, DOES 4-50, inclusive,
15
               Defendants.
16   _____/

17
            On July 16, 2010, the Court heard argument on defendants' motion for summary judgment.
18
     For the reasons set forth below, the Court GRANTS the motion.
19

20
                                      **BACKGROUND**
21
            This action arises out of the alleged unreasonable search and seizure of plaintiff Sean Slider's
22
     1999 Honda Accord, and the alleged subsequent conversion by defendant police officers John Cunnie
23
     and Joseph Fesmire of property stored therein.  According to plaintiff's first amended complaint, on
24
     October 3, 2007, at approximately 2:30 a.m., plaintiff left a recording studio located near 50th Avenue
25
     and East 12th Street in Oakland, California.  Plaintiff, a DJ and music producer doing business under
26
     the label of "Pushin' the Beat," engineered music for a variety of musicians using a MacBook Pro
27
     laptop, which he owned and routinely brought with him to the studio.  Compl. ¶ 12:13-15.  Plaintiff
28

<div style="writing-mode: vertical-rl">**United States District Court**
For the Northern District of California</div>

walked across the street and got into his car, which was registered to his mother.  Slider Dep. Tr. 16:7-16.  According to plaintiff, as he sat in his car pondering his destination, he saw an Oakland Police Department patrol car drive by.  Slider Dep. Tr. 17:13-18:5.  After the patrol car passed, he allegedly pulled away, drove towards a stop sign, and signaled to make a left turn.  Slider Dep. Tr. 19:3-21.  At this point plaintiff noticed that the patrol car was directly behind him, and after driving a block, the patrol car's lights flashed, signaling for plaintiff to pull over.  Slider Dep. Tr. 20:15-19.

Defendant Cunnie, on the other hand, has testified that he was on patrol with defendant Fesmire, driving through the intersection of 50th Avenue and East Twelfth Street, when he observed plaintiff, who was  seated inside his car, cast a furtive glance upon sighting the patrol car and quickly pull away form the curb.  Cunnie Dep. Tr. 8:18-23, 32:18-33:18.  Defendant Cunnie claims that because they were driving through a "high narcotics" area, plaintiff's furtive gesture aroused his and Fesmire's suspicion, and they therefore determined to follow plaintiff, making a u-turn in order to get behind him.  Cunnie Dep. Tr. 33:23-34:19, 42:19-25, 57:11-21.  Defendant Cunnie observed no other suspicious behavior from plaintiff.  Cunnie Dep. Tr. 44:14-45:14.  Once defendants were behind plaintiff, they observed that plaintiff lacked a license plate on his rear bumper, activated their lights, and pulled plaintiff over. Cunnie Dep. Tr. 8:24-9:2, 61:22-24.  Plaintiff states that the rear license plate mounting brackets were broken, and that the license tag was affixed to the back window adjacent to the brake light.

After stopping plaintiff, defendant Cunnie allegedly approached plaintiff and asked for his license and registration, while defendant Fesmire approached on the passenger's side of plaintiff's vehicle.  Slider Dep. Tr. 24:20-21; Cunnie Dep. Tr. 63:5-24.  Plaintiff indicated that the license plate was affixed to the rear window, which Cunnie acknowledged.  Slider Dep. Tr. 31:17-21.  After running plaintiff's driver's license through the DMV database on his computer, defendant Cunnie discovered that it had been suspended, and informed plaintiff that he was driving with a suspended license, Cunnie Dep. Tr. 64:9-69-20.  Plaintiff testified that at the time of the stop, he was unaware of the suspension. Slider Dep. Tr. 29:8-9.

At this point, defendants decided that plaintiff's car would have to be towed, and asked plaintiff to step out of the car.  Defendant Cunnie handcuffed and pat-searched plaintiff for weapons, while Fesmire conducted an inventory search of the car.  Cunnie Dep. Tr. 71:15-19.  Fesmire found ecstasy

United States District Court
For the Northern District of California

2

United States District Court
For the Northern District of California

pills in a Portable Sony Playstation ("PSP") case located in the passenger cabin of the car.  Cunnie Dep. Tr. 80:15-17.  During the search, Fesmire also found clothing, a purse, a BB gun, a PSP (which was not in the case), and a MacBook Pro laptop. Cunnie Dep. Tr. 93:10-15.  During the inventory search, plaintiff, who was seated in the patrol car, observed the officers take his laptop, BB gun, and his friend's purse out of the car and look through them.  Slider Dep. Tr. 41:7-12; Cunnie Dep. Tr. 77:8-78:4. Plaintiff did not observe the defendants place any of the items back in the car, although the purse was found in the trunk when plaintiff's mother retrieved the car from A&B Auto Co.  Slider Dep. Tr. 43:2-45:1.  At some indeterminate point, two additional police officers arrived at the scene.  Slider Dep. Tr. 45:7-47:7.  One, who plaintiff identified as an Asian sergeant and who plaintiff believes to have been defendant Bardsley, approached plaintiff with plaintiff's laptop and asked him to turn it on.  Slider Dep. Tr. 45:7-47:7.  Plaintiff replied that he could not because the laptop had no battery.  Slider Dep. Tr. 47:7-14.  The sergeant then asked if the laptop was stolen, to which plaintiff replied in the negative. Slider Dep. Tr. 47:15-18.

When defendants Cunnie and Fesmire left the scene with plaintiff in the patrol car, plaintiff's car was still at the scene with the tow truck driver. Slider Dep. Tr. 42:24-43:13.  Defendants Cunnie and Fesmire took plaintiff to the North County Jail, which refused to admit plaintiff because his blood pressure was too high.  Slider Dep. Tr. 50:5-14.  As a result, Cunnie and Fesmire took plaintiff to Highland Hospital where plaintiff was admitted and treated.  Slider Dep. Tr. 50:15-16, 51:10-22. According to plaintiff, as Cunnie took plaintiff through the front entrance of the hospital, Fesmire said within earshot that "while you [are] in here dicking around with this shit, I'm going to be outside playing with my PSP."  Slider Dep. Tr. 56:14-57:3, 58:6-9.  Defendants Cunnie and Fesmire deny that this statement was made. Cunnie Dep. Tr. 112:20-23; Fesmire Dep. Tr. 72:2-8.  According to plaintiff, this statement aroused his suspicion, so he inquired whether all of his belongings had been inventoried, and defendant Cunnie assured him that they had.  Slider Dep. Tr. 89:12-20.  When plaintiff's mother retrieved the car from A&B Auto Co., plaintiff's MacBook Pro and PSP were missing.  Slider Dep. Tr. 59:15-23.

Plaintiff's first amended complaint alleges that plaintiff's mother filed a complaint with the Oakland Police Department's Internal Affairs division regarding plaintiff's missing property. Compl.

¶ 23. In response, the Internal Affairs investigator sent plaintiff's mother a letter dated September 11, 2007, informing her that the complaint was "unfounded" because the Stored/Towed Vehicle Report listed the items at issue, and thus according to the police, those items were in the car when it was towed. Compl. ¶ 23.  The Report, which was enclosed as an exhibit and authored by Cunnie, listed the items from the plaintiff's vehicle as "one laptop, misc. clothing, one PSP." Compl. ¶ 23.  Cunnie testified that he prepared a Stored/Towed Vehicle Report at the scene.  Cunnie Dep. Tr. 104:4-11.  This was inconsistent with the carbon copy produced by A&B Auto Co., which was identical to the Police Department's copy, except for the fact that the inventory section was completely blank.  Compl. ¶ 24. Plaintiff alleges that the Police Department's copy was altered either by the Internal Affairs investigator in collusion with defendant officers during the course of the investigation, or by defendant police officers immediately following the removal of the carbon copy.  Compl. ¶ 25.  Cunnie claims that when he gave a carbon copy of the Report to the tow truck driver, he had not yet written down the inventory items. Cunnie Dep. Tr. 103:6-104:11; 105:2-105:8.  Cunnie testified that after the tow truck left the scene, he realized that he had failed to list plaintiff's personal property on the Report, and that sometime between handing the carbon copy to the tow truck driver and completing his shift, he filled in the items. Cunnie Dep. Tr. 106:22-107:7, 113:2-10.

Plaintiff pled no contest to the charge of possession of a controlled substance, based on a stipulation that the police report was the factual basis for the charge, and he was convicted of the possession charge. *See* Def.'s Supporting Evid. Ex. B(2); Ex. B(3) at 5:28-6:5.

Plaintiff's first amended complaint alleges violations of his Fourth Amendment right to be free from unreasonable searches and seizures, and his Fifth and Fourteenth Amendment rights not to be deprived of life, liberty, or property without due process of law.  Plaintiff seeks redress for these violations under 42 U.S.C. § 1983 and has filed three separate § 1983 claims against Cunnie, Fesmire, Bardsley, Oakland Chief of Police Wayne Tucker, and the City of Oakland.  In addition, plaintiff has alleged claims for intentional infliction of emotional distress, violation of his civil rights under Cal. Civ. Code § 52.1, negligence, and conversion.  Defendants have moved for summary judgment as to plaintiff's three § 1983 claims, as well as the IIED and Cal. Civ. Code § 52.1 claims.  Defendants did not move for judgment on the negligence or conversion claim.

4

United States District Court
For the Northern District of California

**LEGAL STANDARD**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id*. However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

I.      **42 U.S.C. § 1983 claims**

        A.      **Fourth Amendment**

        In his complaint and opposition to this motion, plaintiff alleges that defendants Cunnie, Fesmire, and Bardsley violated his Fourth Amendment right to be free from unreasonable searches and seizures

United States District Court

For the Northern District of California

of his personal property. Relying on *Heck v. Humphrey*, 512 U.S. 477 (1994), defendants contend that plaintiff's no contest plea to illegal possession of narcotics bars him from making a Fourth Amendment claim as to the initial stop, search, detention, and seizure of his property. In *Heck*, the Supreme Court held that in order for a § 1983 plaintiff to recover damages for allegedly unconstitutional harm caused by state actions whose unlawfulness would implicitly render a conviction or sentence invalid, he would first have to prove that the underlying conviction has either been reversed on appeal, or expunged or declared otherwise invalid by another tribunal. *Id.* at 487. By pleading no contest to the drug possession charges against him, plaintiff implicitly acknowledged the validity of the initial stop, search, and seizure of plaintiff's car, which led both to the lawful seizure of the belongings stored therein and the discovery of the narcotics he possessed. *See Heck*, 512 U.S. at 487. In his opposition, plaintiff concedes that *Heck* forecloses him from asserting a Fourth Amendment claim as to the initial traffic stop, search, and seizure. Opp'n at 9:11-20. Despite this concession, plaintiff's opposition proceeds to advance an alternative argument as to why defendants are not entitled to qualified immunity. Opp'n at 9:20-11:4. As plaintiff concedes that his challenges to the validity of the initial stop are barred by *Heck*, the Court need not address plaintiff's discussion of qualified immunity.

Plaintiff's remaining claim with respect to the Fourth Amendment is that the alleged theft of plaintiff's MacBook Pro and PSP constitutes an unreasonable seizure. The Fourth Amendment dictates that the right of a person to be "secure in [his] person[], houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV. Although the theft of plaintiff's MacBook Pro and PSP was unlawful (assuming *arguendo* it was committed by the defendant officers), the initial search and seizure of his property was not. When a person is incarcerated, his personal possessions are routinely and lawfully seized and placed in official custody both to protect the detainee's possessions and to maintain security at the detention facility. *See Hudson v. Palmer*, 468 U.S. 517, 540 (1984) (O'Connor, J. concurring). The theft following the initial search and seizure should therefore not be viewed as a constitutional violation, but rather as a tortious injury redressable under the state law of conversion. *See id.* For this reason, the Court GRANTS summary judgment as to plaintiff's § 1983 claim against Cunnie, Fesmire, and Bardsley for violation of his Fourth Amendment rights.

**United States District Court**
For the Northern District of California

**B.     Fourteenth Amendment**

**1.     Procedural due process**

Plaintiff contends that defendants violated his procedural due process rights under the Fourteenth Amendment in seizing and converting his property without adequate pre-deprivation or post-deprivation process.  Defendants contend that plaintiff's procedural due process claim is without merit because plaintiff has not availed himself of constitutionally adequate post-deprivation remedies available against the defendants in state court.  In relevant part, the Fourteenth Amendment commands that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV § 1.  Though fact-dependent, the case law mandates at minimum that the amount of process due in order for the government to effect a constitutionally sound deprivation of property is an opportunity for the plaintiff to be heard in a meaningful time and manner.  *Parratt v. Taylor*, 451 U.S. 527, 540 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).  Procedural due process is violated where a government actor deprives a person of his property pursuant to state procedure without a pre-deprivation hearing, provided the deprivation was predictable and the pre-deprivation process practical.  *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-37 (1982).

However, as the Supreme Court has firmly established in *Parratt* and its progeny, neither the negligent nor intentional deprivation of property without a pre-deprivation hearing gives rise to a due process claim if the deprivation was random and unauthorized.  *See Parratt*, 451 U.S. at 535-44 (1981); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  A defendant in the employ of a state or local government acts in a random and unauthorized manner if (1) his conduct was unforeseeable, (2) his conduct was unauthorized and executed in violation of state procedure, and (3) pre-deprivation procedures would have been impracticable under the circumstances.  *See  Zinermon v. Burch*, 494 U.S. 113, 136 (1990).  If the deprivation is deemed random and unauthorized, availability of an adequate state post-deprivation remedy, especially a state tort action, will preclude relief because it affords constitutionally sufficient procedural due process.  *See id*. at 128 (where state cannot foresee, and therefore provide meaningful hearing prior to deprivation, common law tort remedy satisfies due process).

In this case, it is undisputed that defendants afforded plaintiff no pre-deprivation hearing before seizing and allegedly converting his laptop and PSP. However, defendants assert that even assuming the truth of plaintiff's allegations that they stole his property, defendant officers Cunnie, Fesmire, and Bardsley were unauthorized actors, and thus trigger the *Parratt* inquiry into the adequacy of post-deprivation remedies offered by state law. Plaintiff responds, however, that the defendant officers misappropriated his property, and that their wrongful actions were "exonerated, ratified and condoned by Defendant city[,]" and as such were authorized actors. Opp'n at 12:13-17. In addition, plaintiff asserts that he was denied any opportunity to a meaningful post-deprivation hearing, specifically noting the summary dismissal of his allegations by the Internal Affairs investigation conducted by the Police Department.

However, plaintiff has produced no evidence in support of the allegation that the City of Oakland or its police department encouraged or ordered the seizure and conversion of either plaintiff or any other person's property as a matter of city policy or procedure. Because defendants do not bear the burden of proof at trial, they need only point to the insufficiency of plaintiff's evidence to meet their burden for summary judgment. *Celotex*, 477 U.S. at 325. Plaintiff thus fails to meet his burden in demonstrating any evidence that would support the inference that defendants were not unauthorized actors. Moreover, as defendants point out, under California law, "a public employee is liable for injury caused by his act or omission to the same extent as a private person," Cal. Gov. Code § 820(a), and plaintiff thus has recourse to the state tort remedy of conversion for recovery of the value of his lost property. In addition, the fact that Internal Affairs dismissed plaintiff's complaint is irrelevant to the question of whether there are adequate post-deprivation remedies. Here, the constitutionally adequate post-deprivation procedure is plaintiff's opportunity to seek redress in state court under the law of conversion if he so chooses.

Accordingly, the Court concludes that if plaintiff's allegations of conversion are true, defendants Cunnie, Fesmire, and Bardsley were random and unauthorized actors, and that California's provision of a post-deprivation tort remedy is sufficient to satisfy the requirements of procedural due process. The Court GRANTS summary judgment as to plaintiffs § 1983 claim against defendants Cunnie, Fesmire, and Bardsley for violation of procedural due process.

United States District Court
For the Northern District of California

## 2.      Substantive due process

Plaintiff alleges that defendants violated his substantive due process rights in seizing and converting his property.  Specifically, plaintiff asserts that Ninth Circuit precedent recognizes as valid substantive due process claims that might otherwise be foreclosed by the existence of an adequate post-deprivation remedy under *Parratt*.  Defendants, however, contend that plaintiff's § 1983 substantive due process claim should be dismissed because (1) the *Parratt* decision's rationale regarding the adequacy of post-deprivation legal remedies should apply to § 1983 substantive due process claims, and (2) even if *Parratt* does not apply and plaintiff can state a § 1983 claim, the generalized substantive right under which plaintiff seeks relief is an improper basis for relief given the existence of more specific and relevant constitutional provisions.

Though there is no clear rule as to whether *Parratt* and its progeny extend to substantive due process claims, the Ninth Circuit has held that where a defendant acts in an unauthorized and random manner in the course of violating a constitutional right, the availability of adequate post-deprivation remedies does not bar a substantive due process claim under § 1983. *See Taylor v. Knapp*, 871 F.2d 803 (9th Cir. 1988); *Mann v. City of Tuscon*, 782 F.2d 790, 792 (9th Cir. 1985) ("The *Parratt* rationale does not apply to a denial of substantive due process, for in such a case the deprivation is the taking of property or liberty itself, not the process by which the taking is accomplished, and the availability of neither pre- nor post-deprivation process is relevant.").

It is noteworthy, however, that *Mann* and *Taylor* have since been criticized by the Supreme Court as evasions which could render *Parratt* a dead letter: "In the ordinary case where an injury has been caused not by a state law, policy, or procedure, but by a random and unauthorized act that can be remedied by state law, there is no basis for intervention under section 1983, at least in a suit based on 'the Due Process Clause of the Fourteenth Amendment *simpliciter*.'" *Albright v. Oliver*, 510 U.S. 266, 284-85 (1995) (Kennedy, J. concurring).  Moreover, the underlying substantive right which the *Mann* plaintiff claimed was not one extending from the Fourteenth Amendment itself, but rather was the Fourth Amendment right to be free from unreasonable search and seizure as applied against the states via the Fourteenth Amendment. *Mann*, 782 F.2d at 792.  The *Mann* court held that the plaintiff's § 1983 procedural due process claim failed both because of the impracticability of offering a pre-deprivation

9

hearing and the availability of an adequate post-deprivation legal remedy in state court.  In declining to extend *Parratt* to the substantive due process claimed alleged there, the *Mann* court held that the plaintiff could state a meritorious substantive due process claim for violation of his Fourth Amendment rights. The dispositive difference between this case and *Mann*, however, is that plaintiff cannot obtain relief under the Unreasonable Search and Seizure Clause because the Fourth Amendment does not protect against conversion of personal property following a lawful seizure in the course of a lawful arrest.

In the alternative, plaintiff argues that defendants deprived him of his general substantive due process rights stemming from the Fourteenth Amendment itself.  However, plaintiff does not cite any authority for the proposition that he can maintain a substantive due process claim based on allegations that the defendant officers stole his property after the initial lawful detention, search and seizure. Moreover, the Supreme Court has held that where a more specific provision of the Constitution exists and is incorporated against the States through due process, the more specific provision rather than the more general substantive due process provision must control.  *See Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive government conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide in analyzing these claims."). Accordingly, the Court GRANTS summary judgment as to plaintiff's § 1983 claim against defendants Cunnie, Fesmire, and Bardsley for violation of substantive due process under the Fourteenth Amendment.

### C.     Fifth Amendment

Plaintiff alleged in his complaint that defendants violated the Due Process Clause of the Fifth Amendment.  Plaintiff concedes in his opposition to defendants' motion, however, that the Due Process Clause of the Fifth Amendment is applicable only to the federal government, and not state or local government actors.  *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (citing *Schweiker v. Wilson*, 450 U.S. 221, 227 (1981)).  Instead, plaintiff asserts that he can maintain a claim under the Fifth Amendment for a violation of the Takings Clause.

United States District Court
For the Northern District of California

As an initial matter, the Court notes that the complaint does not allege a violation of the Takings Clause, and it is improper to assert such a claim for the first time by way of an opposition to summary judgment. However, even if the Court were to consider such a claim on the merits, the claim fails. The Takings Clause prohibits the taking of private property for public use without just compensation. U.S. Const. amend. V. The language of this clause mandates that to state a valid claim, plaintiff must allege that his property was taken for a public purpose. *See Kelo v. City of New London, Conn.*, 545 U.S. 469, 480 (2005); *Husband v. United States*, Fed. Cl. 29, 36 (Fed. Cl. 2009). Here, plaintiff has made no such allegation, and has offered no evidence to support the inference that defendants seized his MacBook Pro and PSP for a public purpose. Indeed, if defendants in fact wrongfully converted plaintiff's belongings as plaintiff alleges, the conversion will most likely have been for their own private use, for which state tort law provides recourse. Accordingly, the Court GRANTS defendants' motion for summary judgment on plaintiff's Fifth Amendment claims.

**D.    Section 1983 claims against the City of Oakland and Oakland Chief of Police Wayne Tucker**

Plaintiff alleges that defendants City of Oakland and Chief of Police Wayne Tucker (in his official capacity) promulgated and encouraged a policy and/or practice of misappropriating the property of persons in plaintiff's situation, and are therefore liable under *Monell v. New York Dept. of Social Servs.*, 436 U.S. 658 (1978). *Monell* announced the following standard governing the liability of a municipality under § 1983:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible for under § 1983.

*Id.* at 694. "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may be fairly said to be those of the municipality." *Board of the County Commissioners v. Brown*, 520 U.S. 397, 403-04 (1996) (quoting *Monell*). "Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability

1    on the theory that the relevant practice is so widespread as to have the force of law." *Id.* at 404 (quoting

2    *Monell*).

3            In the instant action, plaintiff has failed to offer any evidence of a policy or custom.  Plaintiff

4    asserts that "the Defendant Officers purposely failed to properly fill out the Stored/Towed vehicle

5    Report and created an internal administrative loophole whereby they could abscond with Plaintiff's

6    personal property and escape responsibility and discipline by Defendant City."  Opp'n at 15:14-16.  In

7    essence, plaintiff is arguing that because the officers allegedly stole his property, and were not

8    disciplined for doing so, this amounts to evidence of a custom or policy.  In addition, plaintiff notes that

9    defendant Cunnie admitted to several deviations from the Oakland Police Department's record-keeping

10   policies, and that Cunnie was not disciplined for these violations.  However, plaintiff's evidence is

11   limited to what happened in this case, and evidence from a single incident is insufficient to establish a

12   governmental pattern or custom. *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1985) (citing *Thompson*

13   *v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989)).  Moreover, as the Court has already

14   granted defendants' motion for summary judgment as to plaintiff's § 1983 claims against defendants

15   Cunnie, Fesmire, and Bardsley, the City of Oakland and Tucker cannot be held liable under *Monell*.

16   *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).  The Court accordingly finds summary

17   judgment appropriate as to plaintiff's *Monell* claims against defendants City of Oakland and Wayne

18   Tucker.

19

20   **II.      State law claims**

21           **A.      Intentional infliction of emotional distress**

22           Plaintiff alleges a claim of intentional infliction of emotional distress against defendants Cunnie,

23   Fesmire and Bardsley, and argues that "a reasonable finder of fact could determine that the Defendant

24   Officers' actions amounted to an IIED violation given that they stopped Plaintiff Slider based on racial

25   profiling and without just cause . . . ."  Opp'n at 16:13-14.  To state a valid claim for intentional

26   infliction of emotional distress a plaintiff must show "(1) extreme and outrageous conduct by the

27   defendant with the intention of causing, or reckless disregard of the probability of causing, emotional

28   distress; (2) the plaintiff's suffering severe or  extreme emotional distress; and (3) actual and proximate

causation of the emotional distress by the defendant's outrageous conduct." *Pardi v. Kaiser Permanente Hosp., Inc.*, 389 F.3d 840, 852 (9th Cir. 2004) (quoting *Cervantez v. J.C. Penney Co.*, 595 P.2d 975, 983 (Cal. 1979)).  Conduct is found extreme or outrageous if it is "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* (quoting *Cochran v. Cochran*, 76 Cal. Rptr. 2d 540, 545 (Cal. Ct. App. 1998)).

Defendants contend that they are entitled to summary judgment because plaintiff cannot establish the first element.  The Court agrees.  Plaintiff provides no evidence that defendants' conduct was intended to cause severe emotional distress beyond that attendant to a person arrested and ultimately convicted of possession of narcotics.  Although plaintiff states in his opposition that defendants pulled him over on account of his race, and asserts that he has lost sleep and is now apprehensive of law enforcement, the complaint does not allege that defendants discriminated against him on the basis of race, and there is no evidence of  racial animus.[1]  Even viewing the deposition testimony in the light most favorable to plaintiff, defendant officers exhibited no use of excessive force or verbal abuse, which might be said to be of such an extreme quality that "no reasonable person in civilized society should be expected to endure it."  *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1004 (Cal. 1993).  Based on the evidence presented, the Court thus finds that no reasonable jury could find in favor of plaintiff and GRANTS summary judgment as to his claim for intentional infliction of emotional distress.

### B.    California Civil Code § 52.1

Plaintiff seeks redress under California Civil Code § 52.1 for the violation of his Fourth, Fifth, and Fourteenth Amendment rights under the U.S. Constitution.  California Civil Code § 52.1 provides that "[a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with . . . may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages."  Cal. Civ. Code § 52.1(b).  To establish a valid claim under § 52.1(b), a plaintiff must allege a violation of a cognizable constitutional right under the U.S. or

---

[1]  The complaint alleges only that plaintiff is "readily recognizable as African American." Compl. ¶ 2.

California constitutions.  *Austin v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 882 (Cal. Ct. App. 2007).  As the Court has granted summary judgment on plaintiffs § 1983 claims, and plaintiff has not alleged any violations of the California constitution in his complaint.  Accordingly, the Court finds summary judgment as to the § 52.1 claim appropriate.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion for summary judgment.  (Docket No. 68).

**IT IS SO ORDERED.**

Dated: July 19, 2010

_____
SUSAN ILLSTON
United States District Judge